UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DERRICK LEE SMITH,

        Plaintiff,

v.

JASON SCOTT JONES et al.,

        Defendants.
_____/

Case No. 1:22-cv-1082

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which

he complains, however, apparently occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.

Plaintiff alleges that Defendant MCF Prison Counselor Jason Scott Jones violated Plaintiff's constitutional rights by serving as a notary public to acknowledge Jones's own signature on affidavits. Plaintiff claims that he asked Defendant Jones to sign affidavits on Plaintiff's behalf verifying that Plaintiff mailed out multiple documents to state and federal courts and that Jones complied. (Compl., ECF No. 1, PageID.2.) Plaintiff then submitted those affidavits to the courts. (*Id.*)

Plaintiff notes, correctly, that it is improper for a notary public to "[p]erform a notarial act upon any record executed by himself or herself." Mich. Comp. Laws § 55.291(2)(a). Moreover, a notary public, the surety on the notary public's bond, and, under certain circumstances, the notary public's employer is liable in a civil action for the damages sustained by the person injured. Mich. Comp. Laws § 55.297.

Plaintiff contends that he has suffered injury as a result of Jones's alleged misconduct. Plaintiff reports that the improper documents were "used as the basis for the Plaintiff[']s cases being thrown out of the multiple state and federal courts as indic[at]ed and shown by the supporting documents detailed within the brief in support of the summons and complaint." (Compl., ECF No. 1, PageID.2.) There are no supporting documents. There is no supporting brief.

Plaintiff is a prolific filer of lawsuits. Although the Court has not reviewed the dockets of every Michigan circuit and district Court, the Court has reviewed the dockets of the Muskegon County Circuit and District Courts, the St. Clair, Macomb, Ingham and Wayne County Circuit Courts, the Michigan Court of Appeals, the Michigan Supreme Court, the United States District Court for the Eastern District of Michigan, the Sixth Circuit Court of Appeals, and this Court. The

Court found no action to which Plaintiff was a party that was dismissed because Jones acknowledged his own signature on an affidavit. That is not surprising. Plaintiff states that he uses Jones to chronicle intermediate steps in the mailing of documents to the various courts. There is no requirement that Plaintiff make such a record, and there is certainly no requirement that such a record be sworn.

Although the Court was not able to identify any case where Plaintiff's claims were rejected because of Jones's notarial misconduct, there is a case where Plaintiff's claims were rejected because: (1) there were no genuine issues of material fact; (2) there were no genuine issues of material fact because Plaintiff failed to respond to the defendants' motion for summary judgment; and (3) Plaintiff claims he did, in fact, respond as demonstrated by one of Jones's affidavits. Order Approving R&R, *Smith v. Burk*, No. 1:19-cv-1018 (W.D. Mich.), (ECF No. 173). Chief Judge Hala Jarbou rejected the affidavit—not because of the flawed notary acknowledgement—but because Jones filed an affidavit indicating that he had not signed the affidavit put forth by Plaintiff and that he would never notarize his own signature. *Id.* The Court concluded that Plaintiff's underlying representation that he had mailed the documents referenced in the affidavit was incredible and that it appeared Plaintiff had fabricated the Jones affidavit stating otherwise.

Plaintiff casts Jones's alleged misconduct as the product of a sprawling conspiracy. In addition to suing Defendant Jones, Plaintiff sues Michigan Assistant Attorney General Jennifer Foster, Michigan Assistant Attorney General H. Steven Langschwager, the MDOC, MDOC Director Heidi Washington, "the MDOC's 'Notary Public' System, Process, Policy Directive, Operating Procedure, and Operational Approval System for Notary Services," and the MDOC's Notary Public Contract Supervisor Staff. Plaintiff speculates that those parties told Defendant Jones to allow Plaintiff to believe that the affidavits were legitimate and then subsequently attacked

3

the affidavits to defeat Plaintiff's lawsuits. Plaintiff offers no facts to support his speculation, just his conclusory statement that it is so.

Plaintiff claims that the Defendants' conduct violated his First, Eighth, and Fourteenth Amendment rights and violated state law. The Court also construes Plaintiff's complaint to present a civil conspiracy claim under § 1983. Plaintiff seeks $80,000 in damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

5

Therefore, the MDOC is properly dismissed on grounds of immunity and because Plaintiff fails to state a claim against the MDOC.

### B. Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe only a supervisory relationship between Defendant Washington and Defendant Jones, or a supervisory relationship between the mythical "MDOC's 'Notary Public' System, Process, Policy Directive, Operating Procedure, and Operational Approval System for Notary Services" and Defendant Jones, or a supervisory relationship between the "MDOC's Notary Public Contract Supervisor-Staff" and Defendant Jones. The fact that those Defendants—to the extent they actually exist—work in some relationship with each other does not evidence a conspiracy against Plaintiff. To the

6

contrary, their interactions are easily explained as "collaborative acts done in pursuit of an employer's business." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). They worked together. That does not suffice to show that "the parties 'agreed to the general conspiratorial objective of violating [Plaintiff's] constitutional rights.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020). Plaintiff's allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Such parallel conduct may be consistent with an unlawful agreement, but it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff fails to state a plausible claim of conspiracy.

  **C.** ***Respondeat superior***

  Moreover, to the extent any of the Defendants supervise Defendant Jones, that relationship, standing alone, would not give rise to liability under § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that any Defendant other than Jones engaged in any misconduct, much less engaged in

7

active unconstitutional behavior. Accordingly, he fails to state a claim against the supervisory Defendants.

### D. First Amendment violation

Plaintiff does not explain how Defendant Jones's improper notarization of his own signature violated the First Amendment; he simply references the First Amendment in one sentence in his complaint. (Compl., ECF No. 1, PageID.3.) Construing Plaintiff's complaint with all possible liberality, the Court believes that Plaintiff intended to argue that Jones's actions have denied him access to the courts in violation of the First Amendment.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

8

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that the action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Although Plaintiff suggests that he has many cases that were impacted negatively by Defendant Jones's improper notarization, he does not bother to identify even one. The Court is intimately familiar with many of Plaintiff's cases, and has reviewed the publicly available dockets of several other courts. There were certainly many dismissed cases, but the Court was not able to identify any cases where Plaintiff lost a remedy because of an affidavit notarized by Defendant Jones. The Court concludes that Plaintiff's non-specific references to dismissed cases do not

suffice to show the necessary lost remedy and, therefore, Plaintiff has failed to state a claim for violation of his First Amendment rights.

### E. Eighth Amendment violation

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society 's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life 's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

No matter how liberally the Court construes the scant facts alleged by Plaintiff, the Court cannot discern any viable Eighth Amendment claim. Plaintiff has failed to state a claim for violation of his Eighth Amendment rights.

### F. Fourteenth Amendment violation

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without

adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Once again, there is simply no way to construe the facts Plaintiff has alleged in such a way that they state a Fourteenth Amendment claim against Defendant Jones or any other Defendant. Plaintiff submitted affidavits to Jones that, according to the complaint, indicated that Jones had processed Plaintiff's legal mail. Jones signed the affidavit. He was not required to do so. Plaintiff had no due process interest in having Jones sign the affidavit. There is no "deprivation" in that act.

Jones notarized his own signature. That was not proper under state statute, but the only other choice Jones had was to not notarize the affidavit at all. Jones did not deprive Plaintiff of anything. To the extent Plaintiff had a "due process" right to have Jones's affidavit notarized, Jones did not deny Plaintiff that right. Plaintiff did not have a protected interest in having Jones take any action with regard to the affidavit(s) Plaintiff prepared for Jones's signature. Plaintiff's allegations do not suffice to state a Fourteenth Amendment due process claim against Defendant Jones.

### G. State law claims

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Jones—or any other Defendant—violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court

11

has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (stating "[r]esidual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### III. Plaintiff's Prisoner Mail Motion

Plaintiff has filed a motion asking the Court to compel the Defendants to file a responsive pleading. (ECF No. 8.) For the reasons set forth above, that motion will be denied.

Plaintiff also asks the Court to direct the MDOC to approve prisoner-to-prisoner mail between Plaintiff and a list of other prisoners who Plaintiff claims are witnesses relating to pending civil cases. Because no witnesses will be required in this case, that request will be denied as well.

12

**Conclusion**

Plaintiff's pending motion (ECF No. 8) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Moreover, should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee, because Plaintiff is barred from proceeding *in forma pauperis* by the "three-strikes" rule of § 1915(g). *See, e.g.*, *Smith v. Writeaprisoner.com, Inc.*, No. 1:20-cv-1201, 2021 WL 210716 (W.D. Mich. Jan. 21, 2021).

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   February 17, 2023                            /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge